```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
COLGATE-PALMOLIVE COMPANY,          |
                                    |
            Plaintiff,              |
                                    |   06 Civ. 2857 (LLS)
        - against -                 |
                                    |   OPINION AND ORDER
J.M.D. ALL-STAR IMPORT AND EXPORT,  |
INC., et al.,                       |
                                    |
            Defendants.             |
------------------------------------X
```

Are the Colddate toothpaste boxes which the defendants sold substantially indistinguishable from plaintiff's Colgate toothpaste boxes?  That is the issue on the present cross motions for summary judgment granting and dismissing plaintiff's claim for trademark counterfeiting.

**Background**

The following facts are taken from plaintiff's Statement of Material Facts submitted pursuant to Local Rule 56.1 ("Pl.'s 56.1 Stmt."), or are otherwise undisputed.

Plaintiff manufactures and sells several varieties of Colgate toothpaste, which is the most popular brand of toothpaste in the United States, and owns related trade dress and registered trademarks.  Plaintiff's Cavity Protection Great Regular Flavor variety is sold in a rectangular box that prominently displays the word "Colgate" in large white letters

against a red background.  To the right of the Colgate mark is a large blue oval that incorporates a ribbon swirl design in varying shades of blue.  Within the swirl are the words "Cavity Protection" in medium-sized white letters.  A small American Dental Association (ADA) symbol appears in the lower left corner.  The phrases "Great Regular Flavor," "Fluoride Toothpaste," and "Helps Strengthen Teeth" also appear on the box in small white letters.  <u>See</u> Am. Compl., Ex. 5; Pl.'s Jan. 12, 2007 Mem. at 10.

In October 2005, acting on a consumer complaint, plaintiff's investigator purchased toothpaste bearing the mark "Colddate," as well as purported Colgate toothpaste from a store in Brooklyn.  Plaintiff later ascertained that defendant J.M.D. All-Star Import and Export, Inc. had imported the Colddate toothpaste from China, and that it was being sold at several other stores in New York.

The Colddate box is similar to the Colgate box, but differs in the following ways.  Instead of the word "Colgate," the word "Colddate" appears in a similar font.  Instead of the blue ribbon swirl design with the phrase "Cavity Protection," the Colddate box has a blue globe design depicting a world map over latitudinal and longitudinal lines with the phrase "Cavity Fighter."  The Colddate box has a diagonal yellow stripe on the upper left corner with the phrase "with CALCIUM" in small red

-2-

letters.  The phrase "FRESH BREATH - STRONG WHITE TEETH" appears beneath the Colddate mark in small white letters where only the product's weight is printed on the Colgate box.  There is no ADA symbol on the Colddate box.  The other phrases in small white letters are altered from "Helps Strengthen Teeth" to "Strengthens Teeth" and from "Great Regular Flavor" to "Great Original Taste."  <u>See</u> Am. Compl., Ex. 5; LaBarre Jan. 12, 2007 Decl. ("LaBarre Decl."), Ex. 10.

Photographs of the front of each box are attached as Appendix A.

Printed on the back of the Colddate box is "Yangzhou Lierkang Daily Used Chemicals Co., Ltd." as well a Chinese mailing address, phone number and email address.  <u>See</u> LaBarre Decl., Ex. 10.

**Trademark Counterfeit**

Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), allows the owner of a registered trademark to recover against defendants who "use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive[.]"

A defendant who uses a counterfeit of a registered mark, as opposed to a mere colorable imitation, is subject to increased civil damages as well as criminal penalties.  <u>See</u> 15 U.S.C. § 1117(b) (providing treble damages for intentional use of a counterfeit); 15 U.S.C. § 1117(c) (plaintiff may recover statutory damages of up to $100,000 for use of a counterfeit mark, or up to $1,000,000 if such use was willful); 18 U.S.C. § 2320(a) (providing criminal penalties of up to 10 years in prison and a fine of up to $2,000,000 for intentionally trafficking goods or services knowingly using a counterfeit mark).

A "counterfeit" is defined as a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127.  In passing the Trademark Counterfeiting Act of 1984, which authorized *ex parte* seizure orders, mandated monetary damages and created criminal penalties, Congress contemplated that the "definition of 'substantially indistinguishable' will need to be elaborated on a case-by-case basis by the courts."  130 Cong. Rec. H12076, at H12078 (Daily Ed. Oct. 10, 1983) (Joint statement on 1984 trademark counterfeiting legislation).  It commented, however, that:

> Obviously, a mark need not be absolutely identical to a genuine mark in order to be considered "counterfeit."  Such

>        an interpretation would allow counterfeiters to escape liability by modifying the registered trademarks of their honest competitors in trivial ways. However, the sponsors do not intend to treat as counterfeiting what would formerly have been arguable, but not clear-cut, cases of trademark infringement.
>
>        For example, a manufacturer may adopt a mark for its goods that is reminiscent of, although certainly not "substantially indistinguishable from," a trademark used by the "name-brand" manufacturer of the product. Thus, "Prastimol" might be used as the mark for a medication that is the functional equivalent of a product sold under the trademark "Mostimol." Whether or not this sort of imitation violates the Lanham Act or other provisions of law, it does not constitute use of a "counterfeit mark" for purposes of this bill.

Id.

The Second Circuit has stated that an allegedly counterfeit mark must be compared with the registered mark as it appears on actual merchandise to an average purchaser. See Montres Rolex, S.A. v. Snyder, 718 F.2d 524, 533 (2d Cir. 1983) (interpreting the federal customs law that prohibits importation of counterfeit merchandise and tracks the "substantially indistinguishable" definition of counterfeit in 15 U.S.C. § 1127); see also GTFM, Inc. v. Solid Clothing Inc., No. 01 Civ. 2629 (DLC), 2002 WL 1933729, at *2 (S.D.N.Y. Aug. 21, 2002) ("There is nothing in the [Lanham] Act, however, which states that to determine whether a defendant is engaged in

counterfeiting, one compares plaintiff's and defendant's marks in the abstract, without considering how they appear to consumers in the marketplace.").

When counterfeit marks are involved, it is not necessary to consider the factors set out in Polaroid Corp. v. Polaroid Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961), which are used to determine whether a mark is a colorable imitation of a registered mark that creates a likelihood of confusion about its source, because "'counterfeit marks are inherently confusing.'" Lorillard Tobacco Co. v. Jamelis Grocery, Inc., 378 F. Supp. 2d 448, 455 (S.D.N.Y. 2005), quoting Philip Morris USA Inc. v. Felizardo, No. 03 Civ. 5891 (HB), 2004 WL 1375277, at *5 (S.D.N.Y. June 18, 2004); see also Gucci Am., Inc. v. Duty Free Apparel, Ltd., 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("the Court need not undertake a factor-by-factor analysis under Polaroid because counterfeits, by their very nature, cause confusion.").

**Discussion**

The Colddate and Colgate packages are not identical. The issue is whether they are substantially indistinguishable.

Defendants argue that the Colddate box is distinguishable because the Chinese manufacturer's name and contact information are printed on the back panel. Plaintiff contends that only the

-6-

front panels should be compared, because a consumer study it conducted showed that consumers do not typically read the back or side panels of toothpaste packaging.  Pl.'s 56.1 Stmt. ¶ 12.

Making all reasonable inferences in plaintiff's favor, the court accepts that an average toothpaste purchaser would not likely inspect the back panel of the package before purchasing, and thus that the relevant comparison is between the front panels.

Plaintiff argues that the front panels are substantially indistinguishable in their spelling of "Colddate" and "Colgate," their same red background and white lettering, and the similarity of their oval blue areas.  Plaintiff says that consumers focus more on the graphic elements of the box than on the trademarks themselves.  It points to consumer studies in which 76% of participants who were asked about their awareness of the Colgate brand mentioned the colors red and white, and 69% identified packaging (most of them by color), id. at ¶ 9, and that showed that "consumers are looking at the package for visual cues such as the color, trademark or other graphic elements." id. at ¶ 11.

It argues that the differences between the front panels of the Colddate and Colgate boxes are trivial, and that customers are not likely to notice them because they buy toothpaste quickly and with little care.  Its study showed that consumers

take an average of 35 seconds to select a toothpaste, id. at ¶ 12, and plaintiff posits that "much of the time spent by consumers in making their decisions was expended, not examining the toothpaste itself, but rather surveying the expansive array of products in the oral care aisle to locate the toothpaste section and sorting through the various varieties to find the particular product of interest." id. at ¶ 11.

Plaintiff also submits the opinion of a psychologist, Dr. Graham Rawlinson, that consumers are likely to read "Colddate" as "Colgate" because "readers, in recognizing words, focus on the beginning and ends of words, and take much less consideration of the position and content of letters in the central parts of words.  This seems largely an automatic process to speed up the reading process."  Rawlinson Decl. ¶ 3.  He illustrates his thesis with a paragraph in which the middle letters of each word are out of order:

> Aoccdrnig to a rscheearch at an Elingsh uinervtisy, it deosn't mttaer in waht oredr the ltteers in a wrod are, the olny iprmoetnt tihng is taht frist and lsat ltteer is at the rghit pclae. The rset can be a toatl mses and you can sitll raed it wouthit porbelm.  Tihs is bcuseae we do not raed ervey lteter by it slef but the wrod as a wlohe.

Rawlinson Decl. ¶ 4.

Reading that text makes two points apparent.  First, it involves an amount of effort which, while slight, is noticeable

to the reader, who realizes the letters are jumbled. That is, they are readily distinguished from normal prose. They are not counterfeit. Second, "Colddate" and "Colgate" are comprised of different letters, not of the same letters out of order as in Rawlinson's paragraph. There is little chance the word "Colddate" would be perceived as actually being "Colgate." Their similarity is not equivalent to identity. The Colddate mark contains a double "dd" whereas plaintiff's contains a single "g". Those marks are conspicuously printed in large type on the front of the boxes. The largest graphical element is also different. The Colddate box has a globe design where a ribbon swirl design appears on the Colgate box. The Colddate box also has a yellow stripe on the upper left corner, while the Colgate box has an ADA symbol on the lower left corner. The smaller texts are non-trivially different, e.g., "Great Regular Flavor" is visually different from "Great Original Taste" and "FRESH BREATH – STRONG WHITE TEETH" is added to the Colddate box where only the weight is printed on the Colgate box. Taken together, it may fairly be said that the boxes are quite similar, but not that they are "substantially indistinguishable."

Cases applying the "substantially indistinguishable" test are inherently fact intensive. In general, however, marks that are similar to the registered mark, but differ by two or more

letters, are not likely to be considered counterfeit. <u>See, e.g.</u>, <u>Montres Rolex</u>, 718 F.2d at 532 (it could not be seriously contended that the average consumer would have found "Amazonas" on shoe heels and soles substantially indistinguishable from "Amazon"; average purchaser would likely not find "Bolivia" watch to be substantially indistinguishable from "Bulova" watch); 130 Cong. Rec. H12076, at H12078 (Daily Ed. Oct. 10, 1983) ("Prastimol" medication not counterfeit of functional equivalent medication sold under the trademark "Mostimol"). On the other hand, marks that are identical to the registered mark as it appears in the marketplace have been held to be counterfeit. <u>See, e.g.</u>, <u>Consol. Cigar Corp. v. Monte Cristi de Tabacos</u>, 58 F. Supp. 2d 188 (S.D.N.Y. 1999) ("Montecristo" cigars were counterfeits of plaintiff's cigars bearing that name despite minor differences in the trade dress); <u>Pepe (U.K.) Ltd. v. Ocean View Factory Outlet Corp.</u>, 770 F. Supp. 754, 759 (D.P.R. 1991) (defendants' T-shirts that exactly reproduced PEPE mark as it appeared on plaintiff's T-shirts were counterfeit); <u>see also</u> <u>Montres Rolex</u>, 718 F.2d at 533 (imported bracelets were counterfeit where the differences from plaintiff's bracelets could be detected only with a jeweler's magnifying loupe).

## Conclusion

For the above reasons, plaintiff's motion for partial summary judgment (Dkt. No. 73) on its trademark counterfeiting claim related to Colddate is denied, and defendants' motion for partial summary judgment (Dkt. No. 79) dismissing plaintiff's trademark counterfeiting claim related to Colddate is granted.

So Ordered.

Dated: New York, NY
       May 4, 2007

                                    _____
                                        Louis L. Stanton
                                           U.S.D.J.

APPENDIX A



